ERNEST GALVAN – 196065
BLAKE THOMPSON – 255600
ROSEN BIEN GALVAN & GRUNFELD LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email:     egalvan@rbgg.com
           bthompson@rbgg.com

BRIAN A. VOGEL – 167413
THE LAW OFFICES OF BRIAN A. VOGEL, PC
770 County Square Drive, Suite 104
Ventura, California 93003
Telephone: (805) 654-0400
Facsimile: (805) 654-0326
Email:     brian@bvogel.com

LANCE WEBER – Fla. Bar No. 104550*
HUMAN RIGHTS DEFENSE CENTER
P.O. Box 1151
Lake Worth, Florida 33460
Telephone: (561) 360-2523
Facsimile: (866) 735-7136
Email:     lweber@humanrightsdefensecenter.org

* *Pro Hac Vice* Application To Be Filed

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,<br><br>            Plaintiffs,<br><br>     v.<br><br>COUNTY OF VENTURA; GEOFF DEAN, GARY PENTIS, LINDA OKSNER, and RICK BARRIOS, in their individual and official capacities, DOES 1-10, in their individual and official capacities,<br><br>            Defendants. | Case No. cv-14-0773-GHK (EX)<br><br>**DECLARATION OF PAUL WRIGHT IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: March 17, 2014<br>Time: 9:30 a.m.<br>Dept.: 650<br>Judge: Hon. George H. King |

[695495-3]

DECLARATION OF PAUL WRIGHT IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I, Paul Wright, declare:

1. I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would competently so testify. I make this declaration in support of Plaintiff's Motion for Preliminary Injunction.

2. I am the founder and editor of Prison Legal News ("PLN"), a project of the Human Rights Defense Center ("HRDC"). HRDC is a non-profit, IRS section 501(c)(3) corporation located in Florida. The core of our mission is public education, advocacy and outreach on behalf of, and for the purpose of assisting, prisoners who seek legal redress for infringements of their constitutional and human rights.

3. I have received numerous awards for my work with HRDC and PLN, including the Petra Foundation Award in 2005, the Washington Coalition for Open Government's James Madison Award in 2007, the National Lawyers Guild's Arthur Kinoy Award in 2008, and the City University of New York Law School's Distinguished Public Service Award in 2011. In 2013 I accepted the First Amendment Award from the Society of Professional Journalists on behalf of HRDC for our work with PLN.

4. HRDC and PLN publish a 64-page monthly journal entitled *Prison Legal News*. This journal provides information about legal issues, including access to courts, disciplinary hearings, prison conditions, excessive force, mail censorship, prison and jail litigation, visitation, telephones, religious freedom, prison rape, and the death penalty. A true and correct copy of the March 2012 issue of *Prison Legal News* (one of the issues that was censored in this case) is attached hereto as **Exhibit A**.

5. HRDC is also a book distributor, specializing in books and materials regarding prisoners' rights and issues related to the criminal justice and corrections systems. HRDC distributes approximately 45 legal and self-help books, some published by HRDC and some by other publishers. These books foster in readers a

better understanding of criminal justice policies, and allow prisoners to educate themselves about related issues, such as legal research, writing business-related letters, health care, and similar topics.

6. *Prison Legal News* has been continuously published since 1990 and HRDC has distributed over one million copies in total. Currently, *Prison Legal News* has approximately 9,000 subscribers in the United States and abroad, including prisoners, attorneys, journalists, libraries, judges, and the general public. *Prison Legal News* is distributed to prisoners in approximately 2,200 correctional facilities across the United States, including institutions within the Federal Bureau of Prisons and prisons within the correctional systems of all 50 states. *Prison Legal News* also is distributed to hundreds of prisoners housed in the 33 adult facilities run by the California Department of Corrections and Rehabilitation, as well as to prisoners housed in death row units and "supermax" prisons, including the federal Administrative Maximum Facility ("ADX" or "Supermax") at Florence, Colorado, the most secure prison in the United States.

7. For each of its subscribers, PLN sends an issue of *Prison Legal News* each month. When a subscription period is coming to an end, PLN sends a letter to the subscriber notifying him or her that the subscription is ending and giving that person information about the opportunity to renew. PLN also sends these letters when a free trial subscription is ending.

8. In addition to its monthly journal, PLN sends prisoners an "Informational Brochure Packet," which includes three items: (1) a *Prison Legal News* Brochure and Subscription Order Form; (2) a Prison Legal News Book List; and (3) a Published Books Brochure. These brochures are sent directly to individually-named inmates, some requesting PLN publications and others identified by PLN as potential subscribers.

9. PLN also periodically sends prisoners copies of case law printed from the Internet, to inform them of recent legal developments impacting their personal

1  rights and freedoms.  For example, PLN sent prisoners copies of *Clement v. California Department of Corrections, et al.*, 364 F.3d 1148 (9th Cir. 2004) and *Prison Legal News v. Lehman*, 397 F.3d 692 (9th Cir. 2005), which speak to prisoners' right to receive and publishers' right to send Internet-based mail and non-subscription bulk mail and catalogs, respectively.

10. Sending publications and correspondence through the mail to prisoners is essential to accomplishing the mission of PLN and HRDC.  The primary aim is to communicate with incarcerated persons about developments in the law and protection of one's health and personal safety while in prison or jail.  Prison Legal News relies on its ability to send publications through the mail to communicate with prisoners, and cannot communicate with prisoners without use of the mail.

11. Each issue of *Prison Legal News* covers recent events and judicial decisions that affect prisoners' lives and legal cases.  Therefore, the ability to deliver issues of *Prison Legal News* quickly – before the news becomes stale, or prisoners' deadlines for court filings expire – is critical to our mission.  If we are not able to deliver issues to a prisoner on a timely basis, we lose a precious opportunity to help that prisoner.  In addition, many prisoners move in and out of correctional facilities quickly, and if we lose the opportunity to communicate with the prisoner for some period of time, we may not be able to locate that prisoner again to provide him or her with assistance.

12. To better reach incarcerated individuals with correspondence and publications, I have developed substantial expertise regarding the mail and correspondence policies of correctional facilities across the country.  Since publication began twenty-four years ago, I have carefully monitored all instances in which a jail or prison refused to deliver *Prison Legal News*.  We also track the mail and correspondence policies of federal, state, and local correctional facilities to ensure that these policies do not prevent us from achieving our mission.  Our monitoring efforts include reviewing all physical evidence of publications returned

to us by correctional facilities, as well as regularly communicating with correctional facilities to ascertain their policies and reasons for rejection of publications and other correspondence.

13. PLN has challenged the censorship policies of a number of jail and prison facilities through litigation. As a result of those experiences, I have become very familiar with the policies and practices of mailrooms in a number of correctional facilities. It is my experience that correctional facilities often use restrictive mail policies to try to reduce staffing needs for the mailroom, or as a pretext to keep out publications and correspondence that administrators do not want to distribute to prisoners. In my experience, correctional administrators prefer not to deliver *Prison Legal News* to prisoners in their custody because the publication provides prisoners with information about their legal and human rights, and how to exercise those rights using the judicial system.

14. We have also challenged postcard-only policies in other jurisdictions. For example, in *Prison Legal News v. Columbia County*, Case No 3:12-cv-00071-SI (D. Or.), the U.S. District Court for the District of Oregon found that the Columbia County Jail's postcard-only policy violated the First Amendment and issued a preliminary injunction and later a permanent injunction that enjoined the county from restricting all incoming and outgoing personal mail to postcards only. Attached as **Exhibit B** is April 24, 2013 order in that case issuing the permanent injunction, where the court found that there was no rational connection between the Jail's policy and security, because Jail security could be achieved by inspecting the mail that comes in through envelopes. *See* Exhibit B at 22-23.

15. Similarly, in August 2011, the U.S. District Court for the Eastern District of Washington approved a Consent Decree finding that Spokane County did not articulate a legitimate penological interest for their mail policies restricting incoming mail to postcard form. Attached as **Exhibit C** is a true and correct copy of the consent decree in that case, Case No. CV-11-029-RHW, where the District

Court enjoined defendants from rejecting mail "on the ground that it is contained in an envelope rather than in postcard form." *See* Exhibit C at 8.

16. PLN also obtained a Consent Injunction against the Sheriff of Berkeley County, South Carolina, following a lawsuit in which the United States Department of Justice intervened on our behalf. *See Prison Legal News v. DeWitt et al.*, No. 10-cv-02594 (D. S.C.). Attached as **Exhibit D** is a true and correct copy of the January 13, 2012 Consent Decree in that case. The consent decree expressly stated that *Prison Legal News* is a "permissible publication[]" despite the presence of "suggestive" advertisements. *See* Exhibit C at 3.

17. Courts have also granted preliminary injunctions against Defendants in similar situations. For example, on March 8, 2012, the district court for the Eastern District of California granted a preliminary injunction regarding Sacramento County's unconstitutional mail policies and failure to deliver PLN publications to inmates in *Prison Legal News v. County of Sacramento*, Case No. 2:11-cv-00907 JAM-DAD. Attached as **Exhibit E** is a true and correct copy of the Court's Order. Similarly, on February 4, 2008, the district court for the Northern District of Georgia granted PLN's motion for preliminary injunction in *Prison Legal News v. Freeman*, Case No 1:07-CV-2618-CAP (N.D. Ga.). In that case, the Fulton County Jail was preliminarily enjoined from continuing to violate PLN's rights, despite the Jail's implementation of a new mail policy after the lawsuit in the case was filed. Attached as **Exhibit F** is a true and correct copy of the Court's Order.

18. PLN has been sending publications and correspondence to detainees in custody in Ventura County (the "County") for many years. There have been no substantial changes in the advertising content contained in *Prison Legal News* since at least 1996. Informational brochure packets have only been altered to include new or different publications for sale, though the general content of these publications has remained constant. PLN also has been sending copies of current legal decisions to inmates since its inception and without incident. In all of the years of

correspondence with prisoners housed in Ventura County jail facilities, we have never received any notification that correspondence or publications were causing security problems.

19. Starting in approximately February 2012, we began receiving items we had mailed to prisoners in Ventura County's jails returned to us through the United States Postal Service's "Return to Sender" process. PLN is aware of at least 148 items of correspondence being censored by Ventura County between February 2012 and the present, described further below. PLN has never been provided any opportunity to appeal the County's refusal to deliver its publications and correspondence.

20. In approximately six hundred other instances since February 2012, we have sent publications and correspondence to prisoners in custody of Ventura County, but do not know whether these items were delivered or rejected. We believe some of these items were likely rejected, because our experience is that when we receive some items returned to sender from a detention facility, there also are many more items that are neither delivered to prisoners at that facility nor returned to our offices. We also have learned about additional rejections because inmates have written to PLN to inform us that they had not received their *Prison Legal News* subscriptions. For example, in June 2012, an inmate wrote to us stating that he had not received any issues of *Prison Legal News* during his six-month subscription to the periodical publication, but we had only received one issue returned to us.

*Prison Legal News* **Censored for "Suggestive" Advertisements or Images**

21. At least 33 copies of *Prison Legal News* sent to inmates in Ventura County jails have been returned to us. These materials were returned with a notation on the front – ink stamped or on an adhesive label – stating "Contents Unacceptable" due to "Suggestive Items," "Suggestive Ads Inside," or "Suggestive Images & Ads." True and correct copies of such returned publications are attached

hereto as **Exhibit G**.

## Subscription Renewal Letters Rejected

22. Since February 2012, at least 19 subscription renewal letters that we sent to inmates at the Jail have been returned to us. Some of these items are returned with the notation "postcards only." Another was returned with the notation that "inmate cannot order subscriptions from jail." True and correct copies of such correspondence are attached hereto as **Exhibit H**. We have sent at least 25 other subscription renewal letters which I presume were rejected under the postcard-only policy, but where we did not receive the item returned to sender.

## Informational Brochure Packets Rejected

23. Since February 2012, at least 47 copies of our Informational Brochure Packets sent to inmates at the Jail have been returned to us, and in 3 instances prisoners wrote and told us they didn't receive the informational brochures. Some of these items have been returned with the notation "postcards only." In other instances, Informational Brochure Packets were returned with labels reading: "Inmates Cannot Order Subscriptions From Jail," "Inmates Cannot Order Anything From Jail," or "Inmates May Not Order Any Billable Items from Jail (i.e., Magazine Subscriptions, Books)." True and correct copies of such returned correspondence are attached hereto as **Exhibit I**. We have sent at least 17 other informational brochure packs which I presume were rejected, but where we did not receive the item returned to sender. No more than 11 brochures were ever sent to inmates within Defendants' jail facilities during any month.

## Copies of Case Law Rejected

24. Since February 2012, Defendants have also returned at least 46 printouts of case law PLN sent to prisoners at the Jail. These materials have been returned with a variety of explanations, including "postcards only," and "Content Unacceptable / Not a 'Prison Legal News' Publication, No Enveloped Personal Correspondence." Others were rejected with the notation that "Per Legal Dept:

1 Xeroxed copies from books are not allowed.  Must be original material" or "Per
2 Legal Dept:  Xeroxed copies from books or internet are not allowed.  Must be the
3 Original materials."  True and correct copies of such returned correspondence are
4 attached hereto as **Exhibit J**.  We have also sent copies of case law to at least 19
5 other prisoners which I presume were rejected, but where we did not receive the
6 item returned to sender.

### Articles from Our Web Site Rejected

8     25.    Occasionally individuals print out copies of articles from the PLN web
9 site and mail them to prisoners.  In February 2013, PLN received copies of articles
10 that had been printed out from the PLN web site and sent by a third party to
11 prisoners at the Jail.  These materials had not been delivered to inmates but had been
12 returned to the third party with the notation "Return to Sender:  Postcards Only – No
13 Envelopes."  True and correct copies of examples of such returned correspondence
14 are attached hereto as **Exhibit K**.

15     26.    Over the past twenty plus years, we have distributed over one million
16 copies of *Prison Legal News*, thousands of brochure packets, and thousands of
17 copies of legal decisions.  While some of these were sent to subscribers in the free
18 world, the vast majority of these copies were delivered to incarcerated persons.  I
19 have never heard of any of these items interfering with a correctional facility's
20 penological interests.  In particular, I have never heard of any security incidents
21 caused by advertisements contained within *Prison Legal News*, by our informational
22 brochure packets, subscription renewal letters, or copies of case law.  Furthermore,
23 prior to the incidents described herein, we regularly delivered copies of *Prison*
24 *Legal News* and other correspondence to prisoners in Ventura County jails and never
25 had any problems.

26     27.    Like many other magazines sent by mail (such as *Time, Newsweek,*
27 *People, The Economist,* and *U.S. News & World Report*), *Prison Legal News*
28 supports itself in part through advertisements, and occasionally includes

advertisements that may be considered by some to be "suggestive" or sexualized, though including no nudity.  Most advertisements contain no pictures, and in the few instances in which pictures may be found, the pictures are barely visible; each is less than one square inch, there is no nudity, and even clothed depictions of breasts, buttocks, or the groin area often are covered by a white star.  Without advertisements, it would be difficult to publish our monthly journal.

28.   I have reviewed the information listed on the Ventura County Sheriff Office's website (a true and correct copy of which is attached as **Exhibit L**, available at http://www.vcsd.org/inmate-faq.php#5), which states that "postcards [are] the only acceptable form of incoming mail for inmates in custody at all Ventura County Sheriff's Office jail facilities."  It also states that postcards depicting "nudity, obscenities, suggestive images, or other offensive materials" will be returned to the sender or placed directly into an inmate's property.

29.   Our organization regularly receives correspondence from prisoners expressing how important it is to them to receive PLN publications and correspondence.  For example, attached as **Exhibit M** is a true and correct copy of such a letter from a prisoner in custody in Ventura County.  Inmates have also complained to our organization that people have stopped writing them under postcard-only policies due to a lack of privacy.  Attached as **Exhibit N** is a true and correct copy providing an example of such correspondence from an inmate in Jail in Ventura County.

30.   Our organization operates with very limited resources and on a very tight budget.  At present, we have approximately twelve employees.  As a charitable organization with virtually no financial resources, we would likely be unable to post a bond, except a bond in a nominal amount.

/ / /

/ / /

/ / /

9
DECLARATION OF PAUL WRIGHT IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1  I declare under penalty of perjury under the laws of the United States and the
2  State of California that the foregoing is true and correct, and that this declaration is
3  executed at White River Junction, Vermont this 4th day of February, 2014.

_____
Paul Wright

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28